Tonn K. Petersen, Bar No. 24744
TKPetersen@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, ID 83702-5391
Telephone: 208.343.3434
Facsimile: 208.343.3232

*Attorneys for Defendant*
*Corson Distilling Systems, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| HOLLOW SPIRITS, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>CORSON DISTILLING SYSTEMS, INC.,<br><br>    *Defendant.* | Case No. 18-CV-00257-KK-JHR<br><br>**SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATE, STAY AND COMPEL ARBITRATION** |

Pursuant to the Court's August 27, 2018 Order for Supplemental Briefing (Doc. 15), Defendant Corson Distilling Systems, Inc.'s ("Corson") hereby submits this supplemental brief in support of its Motion to Dismiss, or in the Alternate, Stay and Compel Arbitration (the "Motion").

**A. The UCC applies to this case because the parties contracted for the sale of goods.**

The parties contracted for the purchase of distillery equipment, specifically a still. Compl. ¶¶ 9, 17, 65. The UCC "applies to transactions in goods." NMSA § 55-2-102.[1] "Goods" is

---

[1] Corson agrees that, for the purposes of the Motion, New Mexico law applies to determine whether an agreement to arbitrate exists and whether that agreement is valid. Corson specifically denies that the substance of this dispute (regarding the performance under the contract and related allegations) is subject to New Mexico law. In the Purchase Agreement, the

SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATE, STAY AND COMPEL ARBITRATION - 1

141435331.2

defined as "all things (including specially manufactured goods) which are movable," and those goods "which are not both existing and identified are 'future' goods." NMSA § 55-2-105(1), (2). Distillery equipment is a good, and thus, the parties' contract is governed by the UCC.

B.  **Hollow Spirits did not place an "order" prior to receiving the quote—Corson's quotation was the offer and Hollow Spirits' payment of the deposit was the acceptance.**

As the Court correctly explains, under the UCC, NMSA § 55-2-206(1)(b), "an order for prompt shipments of goods shall be construed as an offer inviting acceptance." Order at 8. However, Hollow Spirits has not alleged or otherwise demonstrated that it placed an order prior to receiving the quotation from Corson. Indeed, the facts suggest otherwise—the parties were discussing and revising pricing terms and equipment specifications after Hollow Spirits received the first quote. The first quotation was for $134,000. Compl. ¶ 25, Ex. A. The next quotation was for $120,500. *Id.* ¶ 28. The equipment in the second quotation were also different than those in the first. *Compare* Compl. Ex. A *with* Petersen Decl. In Supp. of Corson's Reply, Ex. 2. These facts are more akin to the buyer soliciting or requesting quotations, the seller responding with an offer, and the parties negotiating and refining the order.

Hollow Spirits did not place "an order for prompt shipment of goods" as required by the UCC to constitute an offer. NMSA § 55-2-206(1)(b). In the cases and treatises cited by the Court, the buyer submitted an order or a purchase order that had precise information about said order. *Gardner Zemke Co. v. Dunham Bush, Inc.*, 850 P.2d 319, 310 (N.M. 1993) (buyer submitted purchase order); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1163 (6th Cir.

---

parties agreed that "[s]ubstantive law shall be interpreted according to the laws of the State of Idaho." Petersen Decl. In Supp. of Corson's Reply, Ex. 2 at ¶ 8.

SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATE, STAY AND COMPEL ARBITRATION - 2
141435331.2

1972) (buyer telephoned in an order with precise quantities of carpets it desired). In this case, Hollow Spirits merely "decided to do business with Corson" prior to receiving a quote. Compl. ¶ 24. Such a decision is not specific enough to constitute an "order for prompt shipment of goods."

Instead, Hollow Spirits and Corson spent the next few weeks revising the scope of Hollow Spirits' eventual order, making Hollow Spirits initial request similar to a request for quotations. For example, from the first quotation to the second, the parties changed the sizes of the "botanical basket" and the "spirits safe," in addition to making changes to the supporting hardware (the 4- and 10-plate columns). *Compare* Compl. Ex. A *with* Petersen Decl. In Supp. of Corson's Reply, Ex. 2. In a request for quotation, a buyer comes to the seller with general requirements and the seller responds with pricing and product-specific information. In these circumstances, the quotation is the offer to contract because the initial request lacks the specificity required of an order. *See, e.g.*, *U.S. v. Commercial Mech. Contractors, Inc.*, 707 F.2d 1124, 1126, 1127 n.3 (10th Cir. 1982) ("A written bid or quotation has consistently been construed as nothing more than an offer to perform labor or supply materials and the offer does not ripen into a contract until it is accepted by the offeree."); *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835 (10th Cir. 2000) (unpublished).

When Hollow Spirits requested the quotation from Corson, it's request was not specific enough to constitute an "order" that would be an offer under the UCC. As the Court notes, before the first quotation there is "no evidence of the details of any prior agreement." Order at 9. That is because no such agreement existed—Hollow Spirits did not place an "order"; it simply contacted Corson to get a quotation, which contained proposed specifications for a still and pricing.

SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATE, STAY AND COMPEL ARBITRATION - 3
141435331.2

Therefore, it is Corson's quote, which contains the arbitration provision, that is the offer, and which Hollow Spirits accepted by paying the deposit. An analysis under Section 207 is not necessary because the arbitration agreement provision is not a proposal of additional terms. Rather, the arbitration agreement was part of Corson's offer, which Hollow Spirits accepted without comment or objection.

C.  **Effect of Hollow Spirits' signature on the Purchase Agreement.**

The Court queries the effect of Hollow Spirits' signature on the April 12, 2017 Quotation and Pricing Agreement and the June 14, 2017 Quotation and Purchase Agreement. Hollow Spirits alleges that it signed the April 12, 2017 Quotation and Purchase Agreement on April 21, 2017. Compl. ¶ 36. But the quotation that Hollow Spirits attaches as Exhibit A is not signed, as it claims. Instead, the only signed quotation is Exhibit B, the June 14, 2017 quotation that significantly changed Hollow Spirits' equipment purchase (from decreasing the size of the still to adding a mash tun and a fermenter). Compl. ¶ 40, Ex. B.

The signature on the June 2017 quotation and Purchase Agreement is important as a modification of the contract between the two parties. But the lack of a signature on the April 2017 quotation and Purchase Agreement does not undermine the fact that Hollow Spirits paid its deposit and, in so doing, accepted the terms of the quotation and Purchase Agreement. If Hollow Spirits can show that it subsequently signed the April 2017 quotation and purchase agreement, that signature is merely a moot confirmation of Hollow Spirits' acceptance of the terms already accepted by the payment of the deposit.

An offer is to be construed "as inviting acceptance in any manner and by any medium reasonable in the circumstances." NMSA § 55-2-206(1). This provision allows acceptance by

performance. *See* White, Summers & Hillman, Uniform Commercial Code § 2:36 (6th ed.). An offer may restrict the manner of acceptance and require acceptance by signature or in the same manner as the offer was made, but only if it does so "unambiguously." NMSA § 55-2-206.

Here, Hollow Spirits was not unambiguously restricted from accepting the offer by performance. The April Quotation and Purchase Agreement states that "[a] 50% non-refundable deposit is due before commencement of production." Compl. Ex. A. The Quotation and Purchase Agreement does not contain any provision expressly limiting the manner of acceptance. Hollow Spirits' payment of the 50% deposit is an acceptance by performance. *See, e.g.*, *Provencio v. Price*, 253 P.2d 582, 583, 585 (1953) (initial partial payment of $5,000 was an acceptance of a contract modification). Its subsequent signature does not affect that initial acceptance, and only underscores its acceptance of the terms and conditions contained in the Quotation and Purchase Agreement.

Hollow Spirits also signed the June 2017 Quotation and Purchase Agreement. Compl. Ex. B. The June 2017 Quotation and Purchase Agreement modified the terms of the original contract because it changed the equipment to be included in the order. Compl. ¶ 40. Neither the Complaint nor the documents specify whether Hollow Spirits signed the June 2017 Quotation and Purchase Agreement before it sent the $11,500, for its remaining deposit on the new, higher purchase amount. Irrespective, both the signature on the Purchase Agreement and the additional deposit can operate as an acceptance of the modified terms of the June 2017 Quotation and Purchase Agreement. *See* NMSA § 55-2-206(1)(a). As with the April 2017 Quotation and Purchase Agreement, the June 2017 Agreement contained no restriction as to the manner of acceptance. *See* NMSA § 55-2-206; *see also* NMSA § 55-2-209.

As pled, Plaintiff's claims for alleged breach of contract arises out of the June 2017 Quotation and Purchase Agreement for $143,500. Plaintiff's claims for alleged tortious conduct appear to arise from the April 2017 agreement. Irrespective, any claim that "relates to" either the April or June 2017 Quotations or Purchase Agreements is subject to arbitration because, as demonstrated above, Hollow Spirits accepted the terms of Corson's offer, including the mandatory arbitration provision, when it paid the initial deposit to Corson in April 2017.

**D.   Conclusion**

When Hollow Spirits first contacted Corson in April 2017, it was not with an "order" for distillery equipment. Rather, it was simply seeking a quotation from Corson to contain proposed products and pricing. That quotation is an offer. Hollow Spirits accepted Corson's offer when it paid the 50% deposit for the "commencement of production." The quotation that Hollow Spirits accepted contains a mandatory arbitration provision and Hollow Spirits should not be allowed to evade its agreement to arbitrate this dispute.

DATED: September 28, 2018.                Respectfully submitted,

**PERKINS COIE LLP**

By: /s/ Tonn K. Petersen
Tonn K. Petersen, ISB No. 8385
tkpetersen@perkinscoie.com
PERKINS COIE LLP
1111 W. Jefferson St., Suite 500
Boise, ID 83702-5391
Telephone: 208.343.3434
Facsimile: 208-343-3232

*Attorneys for Defendant Corson Distilling Systems, Inc.*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 28th day of September, 2018, I filed the foregoing electronically through the CM/ECF system and served counsel by mailing a copy at the address below:

H. Jesse Jacobus, III
Frank T. Davis
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza, Suite 700
Albuquerque, NM  87102
hjj@fbdlaw.com

            */s/ Tonn K. Petersen*
            Tonn K. Petersen